United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PHALY NOU

        Plaintiff,

    v.

MICHAEL J. ASTRUE,

        Defendant.
_____/

No.  C 07-01883   (EDL)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND REMANDING FOR FURTHER PROCEEDINGS

    Plaintiff Phaly Nou ("Plaintiff") brings this action pursuant to 42 U.S.C. § 1383(c) challenging the final decision of the Commissioner of Social Security denying her claim for Supplemental Security Income disability benefits.  Specifically, Plaintiff contends that the Administrative Law Judge's ("ALJ") decision that she did not suffer from a severe medically determinable physical or mental impairment was not supported by substantial evidence and was based on legal error.  Plaintiff requests that the Court reverse the decision of the ALJ and remand the case for additional administrative proceedings so that the ALJ can complete the evaluation to determine disability.  Plaintiff and Defendant have filed cross-motions for summary judgments.  As discussed below, the Court grants Plaintiff's motion and remands the case for further proceedings to complete the evaluation (steps three through five) to determine Plaintiff's disability.

///

///

## I. PROCEDURAL BACKGROUND

On December 9, 1999, Plaintiff filed an application for supplemental security income under Title XVI of the Social Security Act. Administrative Transcript filed July 10, 2007 ("Tr.") at 246-58. This is the application currently under appeal.[1] Plaintiff's application was denied initially and on reconsideration. Tr. 214-17, 220-23. Plaintiff then requested a hearing, which was held before the ALJ on August 12, 2002. Tr. 32-66.

On September 24, 2002, the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act. Tr. 20-26. Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 9, 1999; the record showed severe impairment related to her syncopal episodes, but no severe mental impairment which had lasted or was likely to last for 12 continuous months; the severity of Plaintiff's impairment did not meet or equal a listed impairment; Plaintiff failed to meet the burden of showing that her medical impairment prevented her from doing her past relevant work; and there were significant number of jobs existing in the national economy which Plaintiff could perform. Tr. 25. Plaintiff requested review from the Appeals Council, but her request for review was dismissed as untimely. Tr. 458-59. Subsequently, the Appeals Council vacated its dismissal and allowed Plaintiff to request review of the ALJ decision, which was denied on January 26, 2004. Tr. 8. After Plaintiff sought judicial review, the parties stipulated that the case should be remanded pursuant to 42 U.S.C. § 405(g) "for further administrative proceedings, which will include directing the Administrative Law Judge to request updated records from Plaintiff's treating sources." Tr. 494-95. The Court remanded the claim on June 30, 2004. Tr. 496-97. The Appeals Council then vacated the ALJ's prior decision and remanded the case for further proceedings consistent with the Court's order. Tr. 469.

After holding a hearing on April 19, 2005, the ALJ issued a decision finding Plaintiff not disabled on August 23, 2005. Tr. 468-74, 743-61. Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 9, 1999; Plaintiff's symptom allegations were not credible or reliable; and Plaintiff was not disabled at the second sequential step of the disability

---

[1] Previously, Plaintiff had received disability benefits for a limited period from January 1994 through 1995. Tr. 190.

2

1  analysis because the evidence failed to show severe impairment meeting the 12-month duration
2  requirement. Tr. 474-74a. This became the final decision of the Commissioner for purposes of
3  judicial review when the Appeals Council declined review on February 2, 2007. Tr. 461-63.
4  Plaintiff then filed this action on April 4, 2007. The parties have filed cross-motions for summary
5  judgment.

## II.   FACTUAL BACKGROUND

Plaintiff was born in October 1963 in Cambodia. Tr. 246, 469. She previously worked as a cashier in a doughnut shop. Tr. 281, 470. When she filed her social security application, she claimed she became unable to work as of November 30, 1999, because of dizziness, fainting (approximately twice a month), depression, and headaches. Tr. 280. She claimed that she passed out two times at work. Tr. 293.

### A.   Evidence of Impairment

Plaintiff's medical records contain the following information. An October 18, 1995 psychiatric evaluation by Dr. Henri Montadon, M.D. indicates that Plaintiff met the diagnostic criteria for major depression. Tr. 173. However, as of July 5, 1996, Dr. Montadon noted that Plaintiff appeared to be in remission from her depressive illness. Tr. 349. Plaintiff complained of headaches in 1997. Tr. 390-95. Plaintiff's March 1999 medical records show that she complained of fatigue, back pain, and dizziness and was diagnosed with depression. Tr. 387. She was diagnosed with migraines and depression in July 1999. Tr. 385. In October 1999, Plaintiff received injections for her headaches. Tr. 382. In December 1999, Plaintiff reported an episode of loss of consciousness or syncope, and tests including a CT scan of the head and an Electroencephalogram ("EEG") were performed. Tr. 380. The results of these tests were normal. Tr. 365-66. In July 2000, Plaintiff noted continued headaches, and her medical records show a diagnosis of Post-traumatic stress disorder ("PTSD"). Tr. 377. A June 23, 2000 disability medical assessment concluded that she had a history of syncopal episodes which may be due to hyperventilation due to anxiety attacks; probable anxiety depression; consider post-traumatic stress disorder; insignificant musculoskeletal complaints; and tension headaches. The physician concluded that her medical condition was not disabling, but further evaluation was required to determine if she was psychiatrically disabled. Tr. 370. Dr. Ceclia M. Hardey, Ph.D. conducted a psychiatric evaluation

3

in July 2000, and she did not diagnose Plaintiff, but concluded that there was no evidence of organic mental disorder that would preclude her from functioning in the world of work. She also found no evidence of mood or thought disorder. Tr. 373.

Additional records following remand indicate that in July 2002, Plaintiff was diagnosed with "complicated depression psychotic feature" and was treated for poor sleep and thoughts of suicide. Tr. 668. By the end of July, Plaintiff reported improvement with medication and was diagnosed with an adjustment disorder. Tr. 665. Plaintiff continued to have health complaints, and was diagnosed with personality and adjustment disorder in August 2002, PTSD in May and February of 2003, and psychoses in May 2003. Tr. 656-57, 660, 661, 664.

While Plaintiff was appealing the ALJ's initial decision, she filed a new application for disability benefits which resulted in additional examinations. In October 2003, Dr. Morey Weingarten, M.D., a psychiatrist, examined Plaintiff and found that she presented primarily with marital discord and perhaps an adjustment disorder. Tr. 687. While she might benefit from psychiatric consultation, he found that she would be able to deal with typical workplace demands, given the lack of any significant cognitive deficit or acute distress and her ability to understand, remember, and carry out instructions. Tr. 687. While Plaintiff stated she was depressed and irritable, she appeared euthymic except for a very slight edge. Id. On November 19, 2003, Dr. Norbeck, M.D., a state agency psychiatrist, reviewed Plaintiff's records and opined that she had a non-severe affective disorder, which resulted in mild limitations in two functional areas (maintaining social functioning and maintaining concentration, persistence, or pace). Tr. 688, 691, 698.

In March 2004, Plaintiff began psychiatric treatment at the Schuman-Liles clinic. Examination revealed an individual with a sickly appearance, psychomotor retardation, a cooperative and friendly attitude, depressed mood, and constricted affect, impaired concentration and memory, and normal thought and intelligence. Tr. 541-43. Dr. Stefan M. Lampe, a psychiatrist, diagnosed Plaintiff with "major depressive disorder, recurrent, severe without psychotic features." He prescribed her a variety of medications and noted that he might change her diagnosis later depending upon which symptoms she exhibited. Tr. 544. He recommended 13 visits over a 12 month period. Tr. 545. By March 2005, she still suffered from major depressive disorder and PTSD. Tr. 533. Treatment notes did show, however, that various levels of medications addressed

4

1  her symptoms with some success. Tr. 535-44. For example, she reported in July 2004 that she was
2  doing fairly well. Tr. 537. In January 2005, she reported that she was "doing ok" with her
3  medications. Tr. 535. In March 2005, she complained of nervous mood and her medications were
4  adjusted. Tr. 533-34. A few days later, she went to the emergency room and was treated for
5  depression. Tr. 531. However, later that month she reported that her medication adjustment
6  "worked." Tr. 533-34.

### B.    Final ALJ Decision

In the his final decision, the ALJ concluded that Plaintiff is not "disabled on the ground that the preponderance of the evidence fails to show any 'severe,' medically determinable physical or mental impairment, or combination of impairments, meeting the 12-month duration requirement." Tr. 469. In evaluating the evidence, the ALJ noted that the inconsistencies between Plaintiff's reported work history and her earnings records adversely affected her credibility. Tr. 470. The ALJ also noted that while Plaintiff asserted that she suffered from certain disabling symptoms including insomnia, blackouts, and dizziness at each of her two hearings, she admitted to carrying out daily living activities such as cooking, washing dishes, and taking care of her children at the initial hearing, yet then claimed that her children and husband did these chores at the supplemental hearing. He also noted that Plaintiff could drive a motor vehicle notwithstanding her allegations of blackouts and dizziness. Tr. 472.

Regarding her mental impairment, the ALJ found that her impairments reverted to non-severe, relying on records from the Highland General Hospital, Dr. Kao's 1994 description of her depression as "not very severe," Dr. Montandon's 1996 observation that Plaintiff "appear[ed] to be in remission from her depressive illness," Dr. Hardey's 2000 report of the lack of evidence of mood or thought disorders, and the fact that Plaintiff reported that she enjoyed shopping, going to the flea market, and fishing. In addition, the ALJ noted that the State Agency medical consultant determined that her anxiety and depression were not severe. Tr. 472.

The ALJ considered the Schuman Liles clinic records, but he found that these clinic records did not evaluate the severity of Plaintiff's psychiatric condition with sufficient clarity to overcome the "not disabled" opinion put forth by Dr. Weingarten. The ALJ also noted that the treatment period was only for a relatively short time frame – 13 months. In addition, the clinic accepted

Plaintiff's subjective complaints at face value, yet there was ample reason to question her credibility and reliability, so these notes were not entitled to significant adjudicatory weight. Tr. 473. The ALJ relied heavily on Dr. Weingarten's observations that Plaintiff's affectual range was full, and that she was active, and that at most, an adjustment order was present, and Plaintiff was able to deal with typical workplace demands. Tr. 473.

In finding that Plaintiff's symptom allegations were not credible or reliable, the ALJ noted the following factors: (1) Plaintiff's ability to work with the same symptoms for one year during 1999-2000; (2) the fact that Plaintiff had a valid driver's license and drives a car; (3) conflicts and inconsistencies in the record regarding Plaintiff's work history; (4) activities of daily living reported to Dr. Weingarten and described by Plaintiff at the initial hearing; (5) absence of evidence showing ongoing medical treatment for any physical problem; and (6) the fact that Plaintiff studied English in Thailand and that her children speak fluent English indicates she understands more English than she is willing to admit. Tr. 474. The ALJ therefore found Plaintiff "not disabled" at the second sequential step in the disability analysis (discussed below) on the ground that the preponderance of the evidence fails to show any "severe" medically determinable impairment or combination of impairments meeting the 12-month duration requirement. Tr. 474a. The ALJ did not make any findings as to the other sequential steps in determining whether Plaintiff was disabled in the final decision, despite having made such findings in his prior vacated decision. Tr. 25, 474a.

### III.  LEGAL STANDARDS

#### A.  Standard of Review

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. 405(g).  The Commissioner's findings may be set aside only if they are based on legal error or are not supported by substantial evidence. See Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (citing Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996)). "Substantial evidence is more than a scintilla, but less than a preponderance. [It is] relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)).

To determine whether substantial evidence supports the Commissioner's findings, the court "must review the administrative record as a whole, weighing both the evidence that supports and the

6

evidence that detracts from the Commissioner's conclusion." Id. (citing Magallenes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989)). If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary. See id. (citing Flaten v. Secretary of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

### B. Definition and Determination of Disability

To qualify for disability insurance benefits, Plaintiff must demonstrate that she is unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment, which can be expected to result in death or last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A).

The SSA uses a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. 416.920; see also Reddick, 157 F.3d at 721. First, the SSA determines whether the claimant is engaged in substantial gainful activity. 20 C.F.R. 416.920(a)(4). Here, the ALJ determined that Plaintiff was not engaged in such activity. Tr. 471. If the claimant is not engaged in substantial gainful activity, the SSA proceeds to step two to determine whether the claimant has a "severe medically determinable physical or mental impairment " that meets the duration requirement, which requires that the impairment has lasted or is expected to last for at least 12 months or result in death. Id.; 20 C.F.R. 416.909. If the claimant is found to have a severe impairment, the SSA proceeds to step three to determine whether the impairment is equivalent to one of a number of listed impairments that sets forth impairments whose level of severity establishes disability. 20 CFR 416.920(a)(4). The SSA presumes that a claimant is disabled if his impairment meets or equals one of the listings. Id.

If the claimant's impairment does not meet or equal one of the listings, the SSA proceeds to step four to determine the claimant's residual functional capacity, that is, what work activities can the claimant still perform despite the impairments. Id. The SSA considers the claimant not disabled if he or she is able to perform his past work. Id. If the claimant cannot perform his past work, the SSA proceeds to step five to determine whether the claimant can perform other work, considering claimant's age, education and work experience. 20 C.F.R. 415.920(g). If the claimant cannot

7

perform other work, the SSA finds him disabled. Id. The claimant has the burden of proving that she is disabled. A claimant establishes a prima facie case of disability by showing that her impairment prevents her from performing her previous occupation. Once claimant has done so, however, the burden shifts to the Commissioner to show that claimant can perform other work under step five of the analysis. Smolen, 80 F.3d at 1289.

## IV.   CROSS MOTIONS FOR SUMMARY JUDGMENT

The second step of the analysis is at issue here. In Webb v. Barnhart, 433 F.3d 683 (9th Cir. 2005), the claimant contended that the ALJ improperly found him to be not disabled at the second step of the five-step evaluation, and that substantial evidence did not support the finding that his impairments were not medically severe. The Ninth Circuit agreed and reversed. Id. at 685. At step two of the disability analysis, the ALJ must assess whether the claimant has a medically severe impairment or combination of impairments that significantly limits her ability to do basic work activities. Webb, 433 F.3d at 686. The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." Id. (citing 20 C.F.R. § 404.1521(b)). An impairment or combination of impairments may be found not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. Id. at 687 (citation omitted). The Court characterized this second step as a "de minimis screening device [used] to dispose of groundless claims," noting the Social Security Commissioner's statement that "if an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step." Id. (quoting S.S.R. No. 85-28 (1985)). The issue, therefore, is whether the ALJ had substantial evidence to find that the medical evidence clearly established that Plaintiff did not have a medically severe impairment or combination of impairments. Id. at 687.

In Webb, the Ninth Circuit noted that there was objective medical evidence in the record demonstrating back pain, hypertension, knee pain, hip pain, visual disturbances, memory loss, diverticulitis, lack of sleep, difficulty performing physical tasks, and lack of employment from 1991-1997. Id. While the record painted an incomplete picture during the relevant period, it included evidence of problems sufficient to pass the de minimis threshold of step two. Id.

1      However, regardless of how many symptoms an individual alleges, the existence of a
2 medically determinable physical or mental impairment cannot be established in the absence of
3 objective medical abnormalities such as medical signs and laboratory findings.  "In claims in which
4 there are no medical signs or laboratory findings to substantiate the existence of a medically
5 determinable physical or mental impairment, the individual must be found not disabled at step 2 of
6 the sequential evaluation process."  Under these standards, a plaintiff can only establish an
7 impairment "if the record includes signs -- the results of 'medically acceptable clinical diagnostic
8 techniques,' such as tests -- as well as symptoms, i.e., [a plaintiff's] representations regarding his
9 impairment.  Ukolov v. Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005).

10     In the present case, Plaintiff's physicians repeatedly diagnosed her with mental impairments
11 variously described as depression, psychoses or post traumatic stress disorder.  As noted above, she
12 had a diagnosis of depression in 1999 and PTSD in 2000.  Tr. 385, 377.  In July 2002, she was
13 diagnosed with complicated depression psychotic feature.  Tr. 668.  Similar complaints continued in
14 her medical record with various diagnoses, including personality and adjustment disorder in August
15 2002, PTSD in May and February of 2003, and psychoses in May 2003.  Tr. 656-57, 660, 661, 664.
16 In March 2004, Plaintiff's mental status exam led Dr. Lampe to diagnose her with major depressive
17 disorder.  Tr. 544.  It is difficult to say whether this mental status exam mostly took into account
18 Plaintiff's subjective reporting, but, at the very least, Dr. Lampe observed Plaintiff's appearances
19 and made his own observations and assessments, as the status exam contains findings of
20 psychomotor retardation as well.  Tr. 541.  In Webb, the court observed that there was not a total
21 absence of objective evidence as was the case in Ukolov v. Barnhart, 420 F.3d 1002 (9th Cir. 2005),
22 noting in particular the objective evidence of hypertension that corroborated Webb's claims of side
23 effects from his pain killers.  See 433 F.3d at 688.  In Ukolov, 420 F.3d at 1005, the Court found
24 insufficient evidence of a severe impairment at step two where there was only evidence of a doctor's
25 report of the patient's subjective complaints and observations without diagnosis.  Here, Defendants
26 are correct that it is difficult to discern the underlying objective evidence that led to the various
27 diagnoses, and it does appear that much of the evidence underlying Plaintiff's diagnoses was her
28 own subjective reporting.  However, because there are so many diagnoses in the record of major
mental illness over at least a 5-year period, and because the Schuman-Liles mental status

examination also contained objective medical findings based on observation, this case is closer to Webb than to Ukolov.

An impairment may be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to do work. Webb, 433 F.3d at 686. On the one hand, here, unlike the record in Webb, there are some findings in Plaintiff's record that Plaintiff's impairment did not impede her ability to work. A July 2000 disability medical assessment found that there was no evidence of an organic mental disorder that would preclude her from functioning at work. Tr. 373. The October 2003 examination by Dr. Weingarten found that Plaintiff would be able to deal with typical workplace demands. Tr. 687. On the other hand, because there is a dispute in the record as to whether Plaintiff had a "slight abnormality" as opposed to a more severe abnormality, given the evidence in the record of diagnoses of more severe impairments, the ALJ lacked substantial evidence to find that the medical evidence *clearly* established Plaintiff's lack of medically severe impairment. See Tr. 472. "The ALJ should have continued the sequential analysis beyond step two because there was not substantial evidence to show that [Plaintiff's] claim was 'groundless.'" Webb, 433 F.3d at 688.

This ruling does not, of course, mean that Plaintiff "will succeed in proving that [she] is disabled and entitled to disability insurance benefits." Id. And, in completing the sequential analysis, the ALJ certainly should address questions of credibility and may reject the opinion of a treating physician which conflicts with that of an examining physician by setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. Magallanes, 881 F.2d at 751. Indeed, if the ALJ properly finds that Plaintiff can perform her past work under step four of the analysis (which is not an unlikely possibility given the lack of evidence that Plaintiff's impairment restricts her ability to work), Plaintiff would not be disabled under the Act. However, the ALJ must complete the five-step evaluation procedure in order to make these findings, given the Ninth Circuit's caution in Webb.[2]

---

[2] The Court notes that the ALJ previously completed the five-step sequential analysis in his original decision that the Appeals Council vacated, finding that Plaintiff had severe syncopal episodes. However, the Court may not review these findings, as this decision is no longer the final decision of the Commissioner. See 42 U.S.C. § 405(g) (provides for

Defendant also argues that Plaintiff's recent treatment records from the Schuman-Liles clinic do not show evidence of severe impairment, because Plaintiff improved after a few months of treatment once she was taking medication. However, she was still diagnosed with major depressive order and PTSD in March 2005 and ended up in the emergency room for depression that month. Tr. 531, 533. It therefore seems that at least some of the objective evidence shows a more severe impairment during this time period.

**V.      CONCLUSION**

This case is remanded to the ALJ for further proceedings in accordance with this order. This ruling disposes of docket entries 6 and 7.

IT IS SO ORDERED.

Dated: November 30, 2007

_____
ELIZABETH D. LAPORTE
United States Magistrate Judge

---

judicial review of "final decisions" denying benefits); Defendants' Supp. Br. at 2 (noting that this Court has no subject matter jurisdiction to review the September 2002 decision); Plaintiff's Supp. Br. at 1-2.

11